**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SCOTT ANDREWSIKAS,
    *Plaintiff*,

    v.

SUPREME INDUSTRIES, INC.,
    *Defendant*.

No. 3:19-cv-00574 (JAM)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

The question before me is whether the National Labor Relations Act ("the Act" or "NRLA") preempts a union employee's state law claim that he was discharged because of his and a co-worker's complaints about workplace safety. My answer is "yes" on the undisputed facts of this case.

Plaintiff Scott Andrewsikas was a construction laborer for defendant Supreme Industries, Inc. ("Supreme"). He and another co-worker complained to the company that a foreman who was in charge of their work crew was frequently drunk while driving trucks and operating heavy machinery. As a result of these complaints, the company terminated the foreman's employment. But then it also discharged both Andrewsikas and his co-worker who had complained.

Andrewsikas filed this action under a state law—Conn. Gen. Stat. § 31-51q—that generally prohibits an employer from discharging an employee because of the employee's exercise of protected free speech activity. Andrewsikas claims that Supreme discharged him to retaliate for his complaints about workplace safety.

Supreme has now moved for summary judgment. According to Supreme, Andrewsikas's state law claim is subject to *Garmon* preemption—a rule that generally preempts a court claim that could have been presented for investigation and resolution by the National Labor Relations Board ("the Board" or "NLRB"). Because the record conclusively shows that Andrewsikas could

have presented his claim to the Board and because none of the exceptions to *Garmon* preemption apply here, I will grant Supreme's motion for summary judgment.

## BACKGROUND

The following facts are taken from the complaint and the parties' Local Rule 56(a) statements and related documents. The facts are presented in the light most favorable to Andrewsikas as the non-moving party.

Supreme is a unionized construction contractor in the business of building, clearing, and maintaining rights of way for infrastructure such as electrical transmission lines and oil and gas pipelines.[1] Supreme hired Andrewsikas in March 2017 as a laborer.[2]

Andrewsikas was a member of a labor union, and he was covered during his employment with Supreme under the terms of a collective bargaining agreement.[3] The collective bargaining agreement required Supreme and the union to cooperate and consult with each other concerning all aspects of safety, accident prevention, and the health, safety, and welfare of employees, and also to comply with the safety regulations of the State of Connecticut.[4] The agreement afforded Andrewsikas the right to file a grievance for a violation of the agreement's terms and provided for a comprehensive grievance procedure.[5]

Andrewsikas served on a work crew with a co-worker named Nathan Althaus and a crew foreman named Scott Dugee.[6] In November 2018, Andrewsikas and Althaus told Supreme's

---

[1] Doc. #46-3 at 8-10; Doc. #52 at 1 (¶ 1).

[2] *Id.* at 1 (¶¶ 1-2); Doc. #1-1 at 2 (¶ 3).

[3] Doc. #52 at 1-2 (¶¶ 3-4).

[4] *Id.* at 2 (¶¶ 6-7).

[5] *Ibid.* (¶ 8).

[6] *Id.* at 3 (¶¶ 14-15).

safety manager that Dugee was engaged in unsafe worksite behavior.[7] The complaint alleges that Dugee was "dangerous and created a risk of harm to others," because he "frequently drove work trucks in close proximity to live power lines while intoxicated," and because he "frequently operated bulldozers, excavators, payloaders, and other heavy machinery while intoxicated," and because "Dugee on one instance was driving a work truck while intoxicated in reverse and caused it to collide violently with a large rock injuring his passenger."[8]

According to the complaint, Andrewsikas and Althaus both "became so alarmed by Dugee's frequent intoxication while performing hazardous activities at work that they complained about Dugee's drinking on the job to Superintendent Peter Andregetti."[9] Andrewsikas and Althaus discussed Dugee's alleged worksite misconduct every day, and both of them complained about Dugee's alleged workplace safety issues on multiple occasions.[10]

Supreme investigated the complaints of Andrewsikas and Althaus, and then following this investigation terminated Dugee's employment.[11] Supreme subsequently laid off both Andrewsikas and Althaus, and Andrewsikas claims that they were laid off because of their complaints about workplace safety issues.[12]

Andrewsikas filed this lawsuit alleging that he was unlawfully discharged for the exercise of his right to free speech in violation of Conn. Gen. Stat. § 31-51q. The record does not show that he filed a grievance or sought relief from the NLRB. Supreme has now moved for summary judgment on the ground that the NLRA preempts Andrewsikas's state law claim.

---

[7] *Ibid.* (¶ 16).

[8] Doc. #1-1 at 2-3 (¶ 8).

[9] *Id.* at 2 (¶ 7); Doc. #52 at 4 (¶ 21).

[10] *Id.* at 4, 5 (¶¶ 20, 23).

[11] *Id.* at 6 (¶¶ 29-30).

[12] *Id.* at 5, 6 (¶¶ 24, 31).

**DISCUSSION**

Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts are enough in light of controlling legal principles to warrant a trial on the ground that a reasonable jury could decide the case in favor of the opposing party. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).

The NLRA broadly regulates management-labor rights and relations. *See* 29 U.S.C. §§ 151 *et seq.* Section 7 of the Act provides in part that employees "shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 of the Act in turn deems it an "unfair labor practice" for any employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." 29 U.S.C. § 158(a)(1).

The Supremacy Clause provides that "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI. As a general matter, federal law may preempt state law, whether expressly or impliedly, if the state law conflicts with, obstructs, or impairs the operation of federal law. *See generally Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376-77 (2015); *Marentette v. Abbott Labs., Inc.*, 886 F.3d 112, 117 (2d Cir. 2018).

The NLRB has primary jurisdiction to decide disputes concerning unfair labor practices as defined by § 8 of the NLRA. This primary jurisdiction of the NLRB has in turn led the

4

Supreme Court to rule that state law claims may be preempted if they intrude on the Board's

primary jurisdiction to investigate and remedy unfair labor practices. Under *San Diego Building*

*Trades Council v. Garmon*, 359 U.S. 236, 244-47 (1959) and its progeny, "the NLRA preempts

state regulation that either prohibits conduct subject to the regulatory jurisdiction of the [NLRB]

under section 8 of the NLRA or facilitates conduct prohibited by section 7 of the NLRA." *Ass'n*

*of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 80 (2d Cir. 2018) (internal

quotations omitted).

This rule is known as "*Garmon* preemption." In determining whether *Garmon*

preemption applies, a court must decide if the controversy is of the type that could have been

presented to the NLRB. "The critical inquiry…is not whether the state is enforcing a law relating

specifically to labor relations or one of general application but whether the controversy presented

to the…court is identical to…or different from…that which could have been, but was not,

presented to the Labor Board." *Sears, Roebuck & Co. v. San Diego County Dist. Council of*

*Carpenters*, 436 U.S. 180, 197 (1978).

*Garmon* preemption may apply even if a state law claim allows for a remedy—such as a

particular measure of damages—that the NLRB may not be empowered to grant: "Even the

States' salutary effort to redress private wrongs or grant compensation for past harm cannot be

exerted to regulate activities that are potentially subject to the exclusive federal regulatory

scheme." *Garmon*, 359 U.S. at 247.

Because the relevant issue is simply whether the controversy could have been presented

to the NLRB, *Garmon* preemption broadly applies so long as "'an activity is *arguably* subject to

§ 7 or § 8 of the Act.'" *Healthcare Ass'n of New York State, Inc. v. Pataki*, 471 F.3d 87, 95 (2d

Cir. 2006) (quoting *Garmon*, 359 U.S. at 245, with emphasis added). As the Supreme Court has

explained, "[a]t times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections," but because "courts are not primary tribunals to adjudicate such issues," the conclusion follows that "[i]t is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board." *Garmon*, 359 U.S. at 245. A claim is "arguably" within the scope of the Act if it depends on "an interpretation of the Act that is not plainly contrary to its language and that has not been authoritatively rejected by the courts or the Board." *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 395 (1986) (internal quotations omitted).

In light of these principles, the Second Circuit has outlined a three-step inquiry for courts to determine if any particular claim is subject to *Garmon* preemption. First, a court must consider "whether any specific provision of sections 7 or 8 of the NLRA actually or arguably prohibits or protects the conduct that is the subject of state regulation." *Healthcare Ass'n of New York State, Inc.*, 471 F.3d at 96. Second, a court must consider "whether the controversy is identical to the one that the aggrieved party could bring (or induce its adversary to bring) before the NLRB." *Ibid.* Third, a court must consider whether there should be an exception to *Garmon* preemption, either because the conduct at issue is "merely peripheral" to federal labor law, *id.* at 95, or because "the regulated conduct touches interests 'deeply rooted in local feeling and responsibility.'" *Id.* at 96 (quoting *Garmon*, 359 U.S. at 244). I will consider each of these three factors in turn.

### 1. Whether the conduct was arguably protected under the NLRA

For the first step of the inquiry, I must consider whether § 7 or § 8 of the NLRA actually or arguably protects the conduct that is the subject of the state regulation. Andrewsikas brings his claim under a Connecticut law that bars an employer from discharging an employee because the

employee engaged in speech that would be protected by the federal or state constitutions if it were subject to regulation by the government. *See* Conn. Gen. Stat. § 31-51q.[13] Therefore, the "subject" of the state regulation as applied here is Andrewsikas's speech activity of complaining about workplace safety.

Does § 7 of the NLRA arguably protect Andrewsikas's activity? Yes it does. As Andrewsikas alleges in his complaint and does not dispute for purposes of summary judgment, he jointly engaged in his speech activity along with his co-worker Althaus to complain about workplace safety conditions. Therefore, the two employees at least *arguably* engaged in "concerted activities for the purpose of … mutual aid or protection" within the meaning of § 7 of the NLRA.

To explain why this is so, I first consider what it means to engage in "concerted activity" within the meaning of § 7 of the NLRA and then consider what it means to engage in such activity "for the purpose of … mutual aid or protection." The Second Circuit has ruled that an "action is 'concerted' if an individual's conduct has 'some demonstrable link with group action.'" *Meyer Tool, Inc. v. N.L.R.B.*, 763 F. App'x 5, 7 (2d Cir. 2019) (quoting *Ewing v. N.L.R.B.*, 861 F.2d 353, 357 (2d Cir. 1988)). So, for example, "[c]oncerted activity encompasses the lone employee who is acting for or on behalf of other workers, who has discussed the matter with fellow workers, or who is acting alone to initiate group action such as bringing group

---

[13] The statute provides in relevant part: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages." Conn. Gen. Stat. § 31-51q; *see also Trusz v. UBS Realty Investors, LLC*, 319 Conn. 175 (2015) (discussing scope of protection for employee speech under § 31-51q).

complaints to the attention of management." *Bimler v. Stop & Shop Supermarket Co.*, 965 F.

Supp. 292, 298 (D. Conn. 1997).

      Thus, in *Meyer Tool*, the Second Circuit agreed with the NLRB that an employee who

met with other employees and who along with two other employees simultaneously wrote out

and filed seriatim complaints with management about the company's supervisory structure were

engaged in "concerted activity" within the meaning of § 7 of the NLRA. *See* 763 F. App'x at 7-

8. The Second Circuit rejected the argument that the particular employee had "merely expressed

his own personal gripes," because this argument "fails to consider the record as a whole, which

provides substantial evidence to support the Board's determination that [the employee] expressed

a number of the same group concerns that [two other employees] expressed in their complaints

and during the meeting." *Id.* at 8; *see also Bimler*, 965 F. Supp. at 298 ("Although the complaint

is not clear as to whether the plaintiff and her co-workers spoke with management collectively or

whether they each approached management individually, that issue is not dispositive in

determining whether the activity was concerted."); *compare Domnister v. Exclusive Ambulette,

Inc.*, 607 F.3d 84, 90 (2d Cir. 2010) (no *Garmon* preemption where complaint did not allege that

plaintiffs "were acting in concert in any way").

      In light of what joint conduct qualifies as "concerted activity," it is at least arguable that

Andrewsikas engaged in "concerted activity" when he and Althaus simultaneously lodged

complaints about workplace safety to management on multiple occasions. I do not need to decide

if what Andrewsikas and Althaus did *actually* amounted to "concerted activity." It is enough for

*Garmon* preemption purposes that it was *arguably* "concerted activity."

      The same holds true for whether Andrewsikas's concerted activity was "for the purpose

of … mutual aid or protection" within the meaning of § 7 of the NLRA. The record shows that

the complaints were about a threat to workplace safety posed by a foreman who was habitually drunk on the job. This suggests on its face the purpose of the complaints was for "mutual aid or protection." *See, e.g., Misericordia Hosp. Med. Ctr. v. N.L.R.B.*, 623 F.2d 808, 811-14 (2d Cir. 1980) (affirming NLRB determination that employees' concerted activity to prepare report about safety issues at hospital affecting employees and patients was within the scope of § 7 protected activity); *N.L.R.B. v. Lloyd A. Fry Roofing Co. of Delaware*, 651 F.2d 442, 445 (6th Cir. 1981) (employee's concerted action complaints about work truck safety were for "mutual aid or protection"); *Cormier v. Simplex Techs., Inc.*, 1999 WL 628120, at *5 (D.N.H. 1999) (employee's "safety-related complaints to the company and OSHA" were of nature that "clearly satisfy the mutual aid and protection clause").

Although Andrewsikas argues that the purpose of the concerted activity must be related to union activities, the Second Circuit has ruled that "the mutual aid or protection clause was intended broadly to protect activities beyond grievance settlement, collective bargaining and self-organization." *N.L.R.B. v. Coca Cola Bottling Co. of Buffalo, Inc.*, 811 F.2d 82, 88 (2d Cir. 1987) (citing *Eastex, Inc. v. N.L.R.B.*, 437 U.S. 556, 565 (1978)). Similarly, notwithstanding Andrewsikas's argument that his purpose for complaining was to protect the general public, this does not detract from his evident and coinciding purpose to protect those employees, including Andrewsikas himself who worked in close proximity with the foreman who posed a risk to workplace safety.[14] Again, I do not need to decide if the safety-related complaints of Andrewsikas and Althaus were *actually* made for the purpose of mutual aid or protection, because it is enough for preemption purposes that they were *arguably* done for this purpose. In

---

[14] For example, the complaint alleges that the foreman "Dugee on one instance was driving a work truck while intoxicated in reverse and caused it to collide violently with a large rock injuring his passenger." Doc. #1-1 at 3. The record evidence shows that this "passenger" was Andrewsikas, not a member of the general public. *See* Doc. #46-8 at 11.

short, the record conclusively shows that Andrewsikas's claim is based on conduct that is at least arguably subject to protection under the NLRA.

### 2.  *Whether the controversy could have been brought before the NLRB*

The second inquiry is whether the controversy could have been brought before the NLRB. The Board is empowered to investigate and prevent unfair labor practices. *See* 29 U.S.C. §§ 160(a), 161. It is an "unfair labor practice" as defined under § 8(a)(1) of the NLRA for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" under § 7 of the NLRA. 29 U.S.C. § 158(a)(1).

The Second Circuit has ruled that "[a] violation of § 8(a)(1) is established if (1) the employee's activity was concerted; (2) the employer was aware of its concerted nature; (3) the activity was 'protected' by the act; and (4) the discharge or other adverse personnel action was motivated by the protected activity." *N.L.R.B. v. Oakes Mach. Corp.*, 897 F.2d 84, 88 (2d Cir. 1990). Andrewsikas alleges and testified that Supreme terminated his employment because of the complaints he and Althaus made about workplace safety. *See* Doc. #1-1 at 3 (complaint); Doc. #38-1 at 14 (deposition). The record otherwise shows that Supreme was aware of this arguably concerted activity because the company had management conduct an investigation of the complaints. As to each of these required elements for an unfair labor practice under § 8(a)(1) of the NLRA, the record conclusively shows an arguable and good faith basis for Andrewsikas to have presented a complaint for retaliatory discharge to the NLRB.

### 3.  *Whether an exception to* **Garmon** *preemption should apply because the regulated conduct is of peripheral concern to federal labor law or because there is a deeply rooted local interest in regulating the conduct*

The third and final inquiry is whether an exception to *Garmon* preemption should apply. "*Garmon* recognized that the principles it announced were so broad that they would sometimes

yield, as where, for instance, the activity regulated was merely peripheral to the federal concerns, or where the states' need to regulate certain conduct was so obvious that one would not infer that Congress meant to displace the states' power." *Healthcare Ass'n of New York State, Inc.*, 471 F.3d at 95. Thus, "[t]he *Garmon* rule is subject to two exceptions" that include whether the regulated activity is of "merely peripheral concern" to federal labor law and whether it touches on interests "'deeply rooted in local feeling and responsibility.'" *Lindsay v. Ass'n of Pro. Flight Attendants*, 581 F.3d 47, 57 (2d Cir. 2009) (quoting *Garmon*, 359 U.S. at 244).

Andrewsikas has not shown that his complaint is merely peripheral to the concerns of federal labor law. Federal labor law exists in large part for the benefit and protection of employees. It can hardly be said to be of marginal concern to federal labor law if an employer disciplines or discharges workers who complain about unsafe working conditions. The NLRB routinely investigates and adjudicates such claims.[15]

Nor does Andrewsikas show that his complaint is of special or overriding local concern. He has brought this lawsuit under a state law of general application that restricts the rights of

---

[15] *See, e.g., Tyr Energy Logistics & Luis Miguel Garza*, 2021 WL 857373 (NLRB Div. of Judges 2021) (allegations that employee was fired for discussing the safety of working outdoors during lightning strikes with fellow employees and raising concerns to management); *Matsu Corp. D/B/A Matsu Sushi Rest. & Flushing Workers Ctr.*, 368 NLRB No. 16 (NLRB 2019) (allegations that workers were fired for concerted action complaining about unsafe working conditions of 36-hour shift), *enforced sub nom. N.L.R.B. v. Matsu Corp.*, 819 F. App'x 56 (2d Cir. 2020); *Corner Inv. Co., LLC D/B/A The Cromwell & Robert Covert*, 2018 WL 492791 (NLRB Div. of Judges 2018) (allegations that employee was fired for concerted activity complaining about wages, hours, and unsafe working conditions), *adopted* 2018 WL 6322450 (NLRB 2018); *St. Paul Refining Co., LLC, D/B/A/Western Refining & Richard Topor*, 366 NLRB No. 83 (NLRB 2018) (allegations that employee was suspended and denied bonus for concerted action raising workplace safety concerns about a new procedure in a refinery and refusing to work pending review by a safety department representative); *Land Air Express, Inc. & Nicholas Alman*, 2005 WL 762208 (NLRB Div. of Judges 2005) (allegations that worker was fired for concerted action complaining about unsafe condition of forklift truck that might explode); *Marble Magician, Inc. & Rodrigo Espejo, an Individual*, 2004 WL 1073896 (NLRB Div. of Judges 2004) (allegations that worker was fired for concerted action complaining about unsafe conditions involving cutting and grinding stone products); *Transit Mgmt. of Se. Louisiana Inc. & Dian M. Silva*, 331 NLRB 248, 249 (2000) (allegations that bus driver was fired for concerted action complaining about unsafe conditions of buses).

employers to discharge employees because of their speech activities. The law is not targeted locally or even specially at retaliation for speech that implicates workplace safety concerns.

Moreover, the harm to Andrewikas is a labor harm: his loss of employment. This is not a case involving the local regulation of *non*-labor harms of the type that the Supreme Court has ruled may qualify for an exception to *Garmon* preemption. *See Belknap v. Hale*, 463 U.S. 491, 509-11 (1983) (discussing such "local interest" cases to involve harms from misrepresentations, false and malicious statements, intentional infliction of emotional distress, and trespass). "The 'local interest' exception has ordinarily been applied where the conduct alleged concerned activity traditionally recognized to be the subject of local regulation, most often involving threats to public order such as violence, threats of violence, intimidation and destruction of property." *Hotel Emp. & Rest. Empl. Union*, *Local 57 v. Sage Hosp. Resources, LLC*, 390 F.3d 206, 212 n.4 (3d Cir. 2004) (internal quotations omitted). These are not the harms that Andrewsikas complains of here or the focus of the state law that he invokes.

At least two Connecticut courts have applied *Garmon* preemption to a claim for free-speech retaliation arising under Conn. Gen. Stat. § 31-51q.[16] Other courts nationwide have concluded that a State's interest in the enforcement of employee whistleblowing laws is not enough to qualify for the *Garmon* "local interest" exception to preemption.[17]

---

[16] *See Bimler*, 965 F. Supp. at 297-99; *Cygler v. Klingberg Fam. Centers, Inc.*, 2006 WL 3491506, at \*10-12 (Conn. Super. Ct. 2006).

[17] *See Casumpang v. Hawaiian Comm. and Sugar Co.*, 712 Fed. App'x 709 (9th Cir. 2018) (applying *Garmon* preemption to safety claims under Hawaii Whistleblower Protection Act); *Platt v. Jack Cooper Transport, Co., Inc.*, 959 F.2d 91, 95 (8th Cir. 1992) (applying *Garmon* preemption to California state law claims notwithstanding that "we have no doubt that California, like the federal government, has a strong interest in protecting workers who make job safety complaints"); *Smith v. Bewlay*, 2000 WL 306950, at \*10 (D. Conn. 2000) (applying *Garmon* preemption to dismiss Connecticut state law wrongful discharge claim and notwithstanding plaintiff's argument "alleg[ing] that the 'important public policy' she seeks to vindicate is that 'employers may not retaliate against employees for lawful whistle-blowing activities'"); *Flores v. Midwest Waterblasting Co.*, 1994 WL 16189543, at \*9 (E.D. Mich. 1994) (applying *Garmon* preemption to discrimination claim under the Michigan Whistleblowers' Protection Act); *but see Pia v. URS Energy & Constr., Inc.*, 227 F. Supp. 3d 999, 1004 (S.D. Iowa 2017) (declining to apply *Garmon* preemption to wrongful discharge claim under Iowa law that was based on workplace safety complaint).

In short, Andrewsikas has not shown that his complaint is of merely peripheral concern to federal law or that deeply rooted local interests warrant an exception to *Garmon* preemption. And therefore the undisputed facts conclusively show that all three requirements for *Garmon* preemption have been established in this case.

### CONCLUSION

For the reasons set forth in this ruling, the Court GRANTS the motion for summary judgment (Doc. #37) on the ground of *Garmon* preemption. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 22d day of March 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge